# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-1615V
UNPUBLISHED

| | |
|---|---|
| ROGER NYHUIS,<br><br>           Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>           Respondent. | Chief Special Master Corcoran<br><br>Filed: February 10, 2023<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Guillain-Barre Syndrome (GBS) |

*John Robert Howie*, Howie Law, PC, Dallas, TX, for Petitioner.

*Matthew Murphy*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On July 26, 2021, Roger Nyhuis filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered Guillain-Barré syndrome ("GBS") which meets the Table definition for GBS or which, in the alternative, was caused-in-fact by the influenza ("flu") vaccine he received on September 20, 2018. Petition at 1, ¶¶ 1, 38. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Less than one month after Petitioner was determined to be entitled to compensation, Petitioner informed me that they had reached an impasse in their damages discussions and proposed a briefing schedule upon which the parties had agreed. Status Report, filed June 23, 2022, ECF No. 25.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount **$179,831.38, representing $170,000.00 in actual pain and suffering, plus $9,831.38 for past lost wages.**

**I.      Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of*

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of GBS claims, were

*Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

## II.     The Parties' Arguments

The parties agree Petitioner should be awarded $9,831.38 for past lost wages. Petitioner's Damages Brief ("Brief") at 1-2, 37-38; Respondent's Brief on Damages ("Opp.") at 1, 11 n.2, 13. Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's pain and suffering. Petitioner seeks $180,000.00 for his past pain and suffering. Brief at 1-2, 37-38. Respondent argues for an award of $110,000.00. Opp. at 1, 11.

Characterizing Petitioner's GBS illness as moderate, Petitioner emphasized the length of his hospitalization and inpatient rehabilitation – totaling 34 days, his delayed diagnosis and confusion regarding his condition, an accident involving his Foley catheter which caused him additional pain and embarrassment, his need for assistance performing simple tasks such as transferring to the toilet or bed while hospitalized, his inability to work for four months, and need for pain medication and Gabapentin[5] more than one year post-vaccination. Brief at 24-28. He favorably compared the circumstances of his case with those involving petitioner's awarded past pain and suffering compensation ranging from $170,000.00 to $180.000.00: *Dillenbeck, Fedewa, Johnson,* and *Presley*.[6] Brief at 31-32. He insisted that his award should be greater than those given in milder cases such as *W.B.* and *Nelson*.[7] Brief at 28-30.

---

assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[5] "Gabapentin works in the brain to prevent seizures and relieve pain for certain conditions in the nervous system. It is not used for routine pain caused by minor injuries or arthritis. Gabapentin is an anticonvulsant." https://www.mayoclinic.org/drugs-supplements/gabapentin-oral-route/description/drg-20064011   (last visited Feb. 8, 2023).

[6] *Dillenbeck v. Sec'y of Health & Hum. Servs.,* No. 17-0428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) (a decision I issued awarding $170,000.00 for past pain and suffering and $10,857.15, the net present value of payments of $5,000.00 per year for 22 years); *Fedewa v. Sec'y of Health & Hum. Servs.,* No.17-1808V, 2020 WL 1915138 (Fed. Cl. Spec. Mstr. Mar. 26, 2020) (awarding $180,000.00 for past pain and suffering); *Johnson v. Sec'y of Health & Hum. Servs.,* No. 16-1356V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $180,000.00 for actual pain and suffering); *Presley v. Sec'y of Health & Hum. Servs.,* No. 17-1888V, 2020 WL 1898856 (Fed. Cl. Spec. Mstr. Mar. 23, 2020) (awarding $180,000.00 for actual pain and suffering).

[7] *Nelson v. Sec'y of Health & Hum. Servs.,* No. 17-1747V, 2021 WL 754856 (Fed. Cl. Spec. Mstr. Jan. 13, 2021) (awarding $155,000.00 for actual pain and suffering); *W.B. v. Sec'y of Health & Hum. Servs.,* No. 18-1634V, 2020 WL 5509686 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $155,000.00 for actual pain and suffering).

In contrast, Respondent argued that "[P]etitioner's course was less severe" than those described in the four moderate cases cited by Petitioner. Opp. at 10-11. Emphasizing Petitioner's significant improvement when home and lack of interest in physical therapy, he characterized Petitioner's course as relatively mild. *Id.* at 9-11. He maintained Petitioner's "lingering neuropathy and incontinence was attributed to his diabetes and not GBS." *Id.* at 10.

In his responsive brief, Petitioner disagreed with Respondent's characterization of his GBS illness as mild. Petitioner's Damages Reply Brief ("Reply") at 1-2. He faulted Respondent for failing to address his discussion of *Nelson* and *W.B.* or to mention his Foley catheter injury. *Id.* at 3-5. He reiterated his assertion that his GBS illness was best described as moderate. *Id.* at 5-7.

### III.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents. I considered prior awards for pain and suffering in both SPU and non-SPU GBS cases and rely upon my experience adjudicating these cases.[8] However, I ultimately base my determination on the circumstances of this case.

The evidence shows that Petitioner - aged 71 when vaccinated - suffered from a GBS illness involving moderately severe symptoms, such as difficulties standing and walking, and requiring a total of 34 days of hospitalization and inpatient rehabilitation with four transfers between two hospitals and an inpatient rehabilitation facility. Exhibits 5-7. Because some of his initial symptoms may have pre-dated his vaccination and been due

---

[8] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through January 1, 2023 reveals the median amount awarded to be $170,000.00. The awards in these cases - totaling 261, have typically ranged from $125,196.11 to $250,000.00, representing cases between the first and third quartiles and awards comprised of all categories of compensation – including lost wages. 33 cases include the creation of an annuity to provide for future expenses.

Past pain and suffering amounts awarded in substantive decisions issued in 21 SPU GBS cases range from $125,000.00 to $192,500.00, with an additional case involving annuity payments. The median amount award in these 22 cases was $165,000.00. Awards in cases falling with the first and third quartiles range from $155,000.00 to $180,000.00.

4

to his other conditions of high blood pressure and diabetes, Petitioner's GBS was not diagnosed for two weeks. Exhibit 5 at 14, 19, 75; Exhibit 6 at 13, 19-20, 43, 64-69, 82-83, 530-31; Exhibit 7 at 13. Shortly after, Petitioner experienced an injury to his urethra when his Foley catheter was ripped out during a transfer from chair to bed. Exhibit 5 at 228. Thereafter, he had to endure difficulties related to the replacement of the catheter and scarring from the incident. *Id.* at 118-19, 167, 229.

Although Petitioner's symptoms improved after he received five IVIG treatments, he continued to experience some tingling in his hands, facial drooping, a distended abdomen, bowel incontinence, and weakness and a lack of sensation in his lower extremities. Exhibit 5 at 226. Following his discharge from inpatient rehabilitation on November 8, 2018, Petitioner underwent two months of physical therapy ("PT") and occupational therapy at home. Exhibit 8. Towards the end of this therapy, he was able to stop using crutches or a rolling walker for support, but still experienced pain in his feet – noted to be at a level of three out of ten at the end of December. *Id.* at 143. Reporting that he was sleeping in a recliner, Petitioner was still taking Gabapentin and Norco.[9] He also experienced continued bowel incontinence. Exhibit 3 at 785.

During the subsequent year, Petitioner's bowel incontinence and strength improved, but he continued to experience numbness and tingling in the bottoms of his feet, tripping, and difficulties with his gait. Exhibit 3 at 704; Exhibit 9b at 190. At a neurologic appointment in May 2019, he was advised to continue taking Gabapentin. Exhibit 3 at 708. After he reported the same symptoms in December 2019, Petitioner's neurologist opined that these residual symptoms were likely to persist. Exhibit 9b at 197. However, he still described Petitioner's recovery as good and instructed him to gradually wean off Gabapentin. *Id.*; *see also id.* at 190 (indicating Petitioner was already doing so due to a concern it was causing his vision to blur).

Petitioner returned to the neurologist in September 2021, with complaints of tingling on the tops and bottoms of his feet, lower extremity weakness, memory loss, and bowel incontinence. Exhibit 9a at 238-39. However, the neurologist observed that some of his symptoms could be attributed to alcohol abuse and long-term diabetic neuropathy. *Id.* at 245.

The cases cited by Petitioner involving past pain and suffering awards ranging from $170,000.00 to $180,000.00 offer helpful comparisons in this case. The petitioners in those cases experienced similar symptoms, hospitalizations, and recovery to the Petitioner. Both petitioners in *Fedewa* and *Presley* experienced a fall and inability to get

---

[9] Norco "is used to relieve moderate to severe pain. It contains an opioid pain reliever (hydrocodone) and a non-opioid pain reliever (acetaminophen)." https://www.webmd.com/drugs/2/drug-63/norco-oral/details (last visited Feb. 10, 2023).

5

up at the onset of their symptoms, at least two trips to the hospital, and complicated or multiple lumbar punctures. *Fedewa,* 2020 WL 1915138, at *2-3; *Presley*, 2020 WL 1898856, at *10-11. The *Fedewa* petitioner had difficulty tolerating the IVIG treatments, and the *Presley* petitioner required IV antibiotics to treat a simultaneous UTI and infection of his amputated leg. *Fedewa,* 2020 WL 1915138, at *3; Presley, 2020 WL 1898856, at *11. All four petitioners continued to experience at least moderate GBS symptoms several months after returning home. *Fedewa,* 2020 WL 1915138, at *2-3; *Presley*, 2020 WL 1898856, at *10-11; *Johnson,* 2018 WL 5024012, at *7-8; *Dillenbeck,* 2019 WL 4072069, at *1-2. The *Johnson* and *Dillenbeck* petitioners were unable to return to work for several months, and the *Dillenbeck* petitioner did so only due to financial pressures. *Johnson,* 2018 WL 5024012, at *7; *Dillenbeck,* 2019 WL 4072069, at *9-11.

Although Petitioner continued to require Gabapentin until more than a year post-vaccination, the overall duration of his GBS illness was less than that described in the four cases he cited. *Fedewa,* 2020 WL 1915138, at *3-4; *Presley,* 2020 WL 1898856, at *11; *Johnson,* 2018 WL 5024012, at *8; *Dillenbeck,* 2019 WL 4072069, at *2. However, he still warrants an award in this range, albeit on the lower end - $170,000.00, due to his initial difficulties – related to the uncertainty of his diagnosis and difficulties with his Foley catheter.

As I previously have explained during the expedited "Motions Day" hearings and in written decisions, it is my view that GBS pain and suffering awards generally should be higher than those awarded to petitioners who have suffered a less frightening and physically-alarming injury, such as SIRVA. Thus, Petitioner's pain and suffering award should be greater than the $110,000.00 proposed by Respondent. Weighing all of the above, I deem an award of $170,000.00 to be fair and reasonable.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $170,000.00 represents a fair and appropriate amount of compensation for Petitioner's past/actual pain and suffering.[10]**

**I therefore award Petitioner a lump sum payment of $179,831.38, representing $170,000.00 for his actual pain and suffering and $9,831.38 for his actual lost wages in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

---

[10] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[11]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.